Peter G. ABBEY, Relator,

v.

**CONTRACT PROGRAMMING SPE-
CIALISTS, INC., Commissioner
of Economic Security, Respondents.**

No. C5–85–1177.

Court of Appeals of Minnesota.

Nov. 19, 1985.

Review Denied Jan. 23, 1986.

James E. Ballenthin, Minneapolis, for relator.

Thomas A. Roe, Minneapolis, for Contract Programming Specialists, Inc.

Hubert Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Economic Security.

Heard, considered and decided by RANDALL, P.J., and PARKER and SEDGWICK, JJ.

## OPINION

PARKER, Judge.

Relator, Peter Abbey, was discharged by his employer, Contract Programming Specialists, Inc. (CPSI), on July 31, 1984. He applied for unemployment compensation benefits, and a claims deputy determined that he had been discharged for misconduct. Abbey appealed, and a Department referee reversed, concluding that Abbey had been separated for reasons other than misconduct and was therefore entitled to benefits. The referee's decision was based upon testimony submitted by Abbey and upon hearsay evidence presented by a secretary for the employer, who had no actual knowledge of the circumstances surrounding Abbey's termination.

The employer appealed, and the Commissioner's representative remanded for addi-

tional testimony, noting that all of the employer's evidence had been hearsay, and that Abbey's testimony had been somewhat unusual, since Abbey had testified that all of the evidence which the secretary had attempted to submit had been fabricated by the employer. The Commissioner's representative concluded that it would be proper to receive additional testimony and specifically indicated that the remand was for the purpose of determining credibility:

> We therefore vacate the Referee's decision and remand this case for further evidence in order that the parties may confront each other under oath for the purpose of direct examination and cross examination. We advise the employer to appear in person with live witnesses; and if the employer does not appear or appears and presents only letters and depositions rather than live testimony and witnesses who would be subject to cross examination, the Referee is directed to find that the claimant was discharged for reasons other than misconduct. If relevant testimony is given under oath by both sides, the Referee will be able to judge the relative credibility of the parties; and we do not express any opinion as to what the decision should be in that event.

Upon remand, the employer submitted testimony by its chief executive officer, its chief financial officer, and three other employees. Abbey also testified, and all parties were extensively cross examined. After weighing the evidence, the referee determined that Abbey's testimony was more credible, and that he had not engaged in misconduct.

The employer appealed, and the Commissioner's representative reversed, noting that although normally a referee's decision regarding credibility would be deferred to, in this instance the referee's findings were "unreasonable and not in accordance with the greater weight of the evidence." We reverse.

## FACTS

Peter Abbey was employed by CPSI in March 1984 as a marketing manager. Ab-

bey was hired primarily because he had been instrumental in obtaining a contract with the Minnesota County Computer Cooperative (MCCC)—CPSI's primary client. CPSI provides computer software support and development services to MCCC. Abbey worked for CPSI for five months and had been promoted to general manager when he was discharged.

When he was not on the road, Abbey generally worked from 9:30 or 10:00 a.m. until around 7:00 p.m. The chief executive officer testified that he had warned Abbey several times that he should be in the office from 8:00 a.m. to 5:00 p.m. when he was not on the road, and offered two letters which supported his claim. However, when Abbey denied having received such warnings, CPSI's officers admitted that the letters had not been delivered, and withdrew them from the record.

CPSI also submitted testimony indicating that Abbey had been absent or tardy upon several occasions when he was supposed to be at meetings in other counties. On at least two occasions, an employee of CPSI claimed county personnel had called CPSI to ask why Abbey was not at meetings which he had scheduled. However, Abbey testified that those meetings had not been scheduled for definite times, and that he had in fact met with county personnel as scheduled.

The chief executive officer also testified that in April Abbey was absent from work for several days without authorization when he was supposed to be making a bid on a computer for one of the counties. As a result, the officer claimed CPSI was embarrassed when the bid was not made and the company's prestige was damaged. Abbey, on the other hand, testified that he had been given permission to be gone, and that he had no authority to submit a bid on behalf of CPSI. However, the chief financial officer testified that Abbey was authorized to submit a bid on behalf of the company.

Despite this allegedly unexcused absence in April, and the officers' alleged unhappi-

ness with Abbey's hours, the evidence indicates that in June 1984 Abbey was promoted to general manager of CPSI.

Abbey was again absent in June 1984 when a bid was to be submitted to purchase a computer for another county. Although Abbey testified that he had received permission to attend a funeral, the chief executive officer testified that Abbey's absence was unauthorized and that as a result another bid was lost.

Upon several occasions, Abbey had discussed with his employer the possibility of involving CPSI in the forms business. It is undisputed that CPSI decided not to become involved in that business, although Abbey was told that he could pursue the business on his own, without any involvement by CPSI. Despite this understanding, on July 12, 1984, the chief executive officer saw a letter on Abbey's desk written on CPSI's letterhead and addressed to MCCC which referred both to CPSI and to the forms business. The chief executive officer again indicated to Abbey that CPSI did not want to be involved in the forms business. Although the employer claims that Abbey was told CPSI was not to be mentioned in the letter, Abbey testified that the chief executive officer approved the letter on the condition that the letterhead be removed. Abbey removed the letterhead and sent the same letter to MCCC.

On that same day, Abbey made a presentation to MCCC regarding several proposals outlined in the letter. Although the minutes of the meeting do not indicate that the forms business was discussed, the chief executive officer testified that after the meeting, an MCCC officer believed CPSI wanted to get involved in the forms business and called the chief executive officer to confirm this understanding. CPSI submitted an affidavit by the MCCC officer to support this claim. Abbey, however, testified that he did not mention the forms business in his presentation.

Abbey was terminated on July 31 for excessive tardiness and absences, and refusal to comply with CPSI's order that he not involve the company in the forms business.

## ISSUES

Did the Commissioner's representative erroneously reverse the referee's decision regarding credibility of the witnesses?

## DISCUSSION

■ "Misconduct," under Minn.Stat. § 268.09, subd. 1, has been defined as:

> [C]onduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertencies, or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). Misconduct is to be narrowly construed, *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 222 (Minn.1981), and an employer has the burden of proving misconduct. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973).

■ Abbey argues that the Commissioner's representative erroneously reversed two referees who had determined that Abbey was more credible than CPSI's witnesses. It is appropriate for the Commissioner to defer to a referee's determination regarding credibility, since the referee has the opportunity to observe the witnesses. *See Flahave v. Lang Meat Packing*, 343 N.W.2d 683, 686 (Minn.Ct.App.1984).

However, we have also indicated that the Commissioner need not defer to a referee's findings. *Tester v. Jefferson Lines*, 358 N.W.2d 143, 145 (Minn.Ct.App.1984). Upon appeal to this court, it is the Commissioner's factual determinations which must be reviewed, rather than the referee's, *Tester*, 358 N.W.2d at 145, and this court cannot reweigh the evidence to determine where the preponderance lies. *Nyberg v. R.N. Cardozo & Brother Inc.*, 243 Minn. 361, 67 N.W.2d 821 (1954). The general rule is that the Commissioner's findings must be upheld if there is evidence in the record which reasonably tends to support them, *White v. Metropolitan Medical Center*, 332 N.W.2d 25 (Minn.1983), although we must consider:

> whether the department kept within its jurisdiction; whether it proceeded on an erroneous theory of law; whether its action was so arbitrary and unreasonable that it represents its will and not its judgment; or whether the decision of the department is without evidence to support it.

*King v. Little Italy*, 341 N.W.2d 896, 898 (Minn.Ct.App.1984) (quoting *Johnson v. Wilson & Co.*, 266 Minn. 500, 507, 124 N.W.2d 496, 501 (1963)).

■ This appeal, however, does not involve a situation where a referee's determination has simply been reversed by the Commissioner. Here, the Commissioner first remanded to the referee specifically for findings regarding credibility of witnesses and then proceeded arbitrarily to reverse those findings. We find such action to be the essence of caprice. In keeping with the Commissioner's emphasis upon the importance of a determination regarding credibility, the referee specifically stated in his memorandum:

> This matter was remanded for the referee to judge the relative credibility of the parties and to decide whether or not the claimant was discharged for misconduct. This referee feels that the claimant was discharged for reasons other than misconduct. * * * He set his own hours and was not warned that tardiness

or absenteeism could lead to termination or other discipline. The claimant did not intend to disobey any orders from the chief executive officer when he submitted a proposal on July 12, 1984. The claimant tried to do a good job for the employer and his conduct does not show a willful or wanton disregard of the employer's interests.

> After listening to the testimony, observing the demeanor of the witnesses and reviewing all the evidence, the referee concludes that the claimant's testimony was more credible than the testimony of the employer's chief executive officer and chief financial officer.

There is considerable evidence in the record to support this judgment. We find particularly persuasive the fact that the employer introduced into evidence four documents addressed to Abbey, but later admitted that Abbey had never received those letters. The referee also indicated that this had a bearing upon his determination regarding credibility:

> At the first hearing, [Abbey] testified that he never saw or received the four letters (dated March 23, 1984, April 30, 1984, June 6, 1984, and July 5, 1984) submitted to the Department of Economic Security by the employer. These four letters consisted of warnings for tardiness and absenteeism, a statement regarding the hours of work and a statement instructing the claimant not to get the employer involved in the forms business. At the second hearing the employer admitted that these four letters had not been delivered to the claimant.

The Commissioner's representative, however, simply chose to substitute his judgment for that of the referee. Although we have generally upheld such action by the Commissioner, in this instance, where the Commissioner specifically remanded for findings regarding credibility, where the referee carefully followed the Commissioner's directives, and where the Commissioner then proceeded to reverse, we are compelled in turn, to reverse the Commissioner. Our decision is even more warranted in the

present situation than in *Grotjohn v. Cornbelt Foods, Inc.*, 370 N.W.2d 48 (Minn.Ct. App.1985), where we concluded:

> In this case and under these facts, the testimony and the record do not support any other finding than that returned by the referee and the referee should be affirmed.

> Here, there was no obvious error on the part of the hearing referee and there is no reasonable basis for the Commissioner to disregard the referee's findings.

*Id.* at 50.

Because we reverse the Commissioner's decision, we need not address Abbey's claim that the Commissioner erroneously relied upon uncorroborated hearsay evidence.

### DECISION

The decision of the Commissioner of Economic Security is reversed and the decision of the referee is reinstated.

Reversed.