Kenneth W. TREBELHORN, Relator,

v.

MINNEAPOLIS CABLE SYSTEMS,
INC., Commissioner of Economic
Security, Respondents.

No. C2–85–1699.

Court of Appeals of Minnesota.

Jan. 28, 1986.

Thomas G. McCarthy, Winthrop, for relator.

Douglas P. Seaton, Minneapolis, for Minneapolis Cable Systems, Inc.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Economic Sec.

Considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Appellant Kenneth Trebelhorn was discharged from employment after his employer found that he had wrongfully appropriated the sales and commissions of other salespersons. Appellant applied for unemployment compensation, but that request was denied by a Department of Economic Security claims deputy. Trebelhorn requested a hearing by a referee, and he was granted unemployment benefits as a result of that hearing. A representative of the Commissioner of Economic Security reversed, finding Trebelhorn was discharged for misconduct. This appeal followed. We affirm.

## FACTS

Appellant Kenneth Trebelhorn was hired by Minneapolis Cable Systems, Inc. in April 1984. He received training to work as a

sales representative and as a customer service representative. He worked in sales and customer service, and on March 1, 1985, he was promoted to sales supervisor.

Under company rules, each sales representative is responsible for and receives commissions from sales within a specific territory. The territory is exclusive; no sales representative is allowed to receive credit for sales made from another representative's territory. A sales representative receives commissions for all sales made personally and for any sales made when a customer within the representative's territory places an order through the customer service department. This company rule of exclusivity is not a written rule and is supposed to be passed on to sales personnel during training sessions.

Since appellant worked as both a salesperson and as a customer service representative, he received compensation in two different ways. He received commissions from the sales he made in his sales work, but when he worked in the customer service department he received an hourly wage. He was not entitled to receive commissions when he worked in the customer service department.

On March 18, 1985, appellant's supervisor and a personnel representative met with appellant and informed him that a number of sales had been improperly credited to his commission account. The sales had been made over the telephone while appellant was working in the customer service department, so the sales should have been credited to the salesperson from whose territory the call came. Appellant admitted that he had placed the sales under his account number instead of crediting them to the proper salesperson's account. A subsequent investigation revealed that 26 sales had been improperly credited to appellant's account. The total amount of sales improperly credited was $920.50. On March 28, 1985, appellant received a letter of termination.

Subsequent to his termination, appellant applied for unemployment compensation. After a hearing, a referee for the Department of Economic Security determined that appellant had not committed misconduct because appellant believed in good faith that he was entitled to all sales credited to him. Since there was no misconduct, the referee found that appellant was entitled to benefits. A Commissioner's representative reversed the referee, finding that he had committed misconduct. Trebelhorn appeals the ruling of the Commissioner's representative.

## ISSUE

Does the record support the finding by the Commissioner's representative that appellant's actions constituted an intentional violation of his employer's policies?

## ANALYSIS

■ We cannot reverse the findings of the Commissioner's representative if the findings are reasonably supported by the record. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). A person who has been discharged from employment for misconduct is not entitled to unemployment benefits. Minn.Stat. § 268.-09, subd. 1(2) (1984). The Minnesota Supreme Court has interpreted "misconduct" as follows:

"The intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in iso-

lated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *."

*Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). The employer has the burden of proving that the employee was discharged for misconduct. *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973).

■ Appellant claims he was not informed of his employer's policies regarding the exclusivity of sales territories. The only evidence in the record to refute his claim is the testimony of the current sales supervisor. He testified that a trainer told him that salespersons are informed that their sales areas are exclusive. The referee found that appellant was not aware of the company's policy of exclusivity and awarded benefits to appellant. The Commissioner's representative apparently found the sales supervisor's hearsay evidence to be persuasive, because this is the evidence upon which is grounded the reversal of the referee and the finding that appellant intentionally violated company policies. This is the evidence in the record that "reasonably supports" the finding of the Commissioner's representative. Since this evidence in the record exists, we must affirm the Commissioner's representative and deny unemployment benefits for appellant.

We do not, however, affirm without misgivings. We have deepening reservations, caused by this case and others like it, about application of the rule of law requiring deference to the Commissioner's representative in cases where the representative rejects a referee's findings that are based on the credibility of testimony the referee heard. *See Abbey v. Contract Programming Specialists, Inc.,* 377 N.W.2d 28 (Minn.Ct.App.1985). In *Abbey,* this court reversed the Commissioner's representative and called his actions the "essence of

caprice" because he returned a case to the referee for additional testimony and then rejected findings of the referee, which were based on the credibility of a witness. 377 N.W.2d at 31–32.

The purpose for the deferential standard of review is settled. When considering the actions of an administrative agency,

[f]ull allowance must be given not only for the opportunity of the agency, or at least its examiners, to observe the demeanor of the witnesses, but also for the reality that agency matters typically involve a kind of expertise—sometimes technical in a scientific sense, sometimes more a matter of specialization in kinds of regulatory programs.

*Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 850 (D.C.Cir.1970). Nevertheless, expertise can "become a monster which rules with no practical limits on its discretion." *Id.* (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 167, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962)). More to the point, it is not evident that administrative expertise is a deciding factor when a decision rests largely upon an assessment of the credibility of witnesses.

This is a case in which the administrative decision must be determined after a reasoned assessment of the credibility of testimony. The issue is whether the appellant committed misconduct, and the issue is decided by a determination of which witness's testimony is more persuasive. Should the Commissioner's representative have broad discretion to determine the credibility of evidence when he has no opportunity to view the witnesses? Is that discretion even less appropriate when the case involves such uncomplicated issues as knowledge, intention, and misconduct? We think these are questions that the supreme court should address.

Considering the deference with which we must review administrative findings, the Commissioner's representative properly found that appellant was discharged for

misconduct and was therefore ineligible for benefits. This is especially a case for deference to the Commissioner's representative because of the unusual circumstances in which findings of fact were made. For some unexplained reason, a referee other than the one who heard testimony wrote the findings and conclusions. Thus, the Commissioner's representative who reversed could conclude here that he was in an equally tenable position to make findings as was the referee who wrote them.

## DECISION

The Commissioner's representative properly found that appellant was discharged for misconduct and was therefore ineligible for unemployment benefits.

Affirmed.