**MARK W. PETERSON LAW OFFICES, Relator,**

v.

**James H. MURPHEY, Department of Jobs and Training, Respondent.**

No. C1–86–389.

Court of Appeals of Minnesota.

Aug. 19, 1986.

Mark W. Peterson, David L. Warg, Minneapolis, for relator.

Bradford Colbert, Minneapolis, for James H. Murphey.

Hubert H. Humphrey, III, State Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Department of Jobs and Training.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

The employee's conduct did not rise to the level of misconduct which should disqualify him from unemployment benefits. We affirm.

## FACTS

James Murphey was employed by the Mark W. Peterson Law Office for two months, first as a law clerk and later as an associate attorney. Two incidents occurred during this time which led to Murphey's discharge and which the employer claims should disqualify Murphey from receiving unemployment compensation benefits. The first event occurred five days before he was discharged when Murphey, his employer, a secretary, a client, the client's wife and several others were having drinks in a bar near the courthouse. During the conversation, Murphey referred to some of the employer's other clients as "assholes and dipshits."

The following Saturday morning, the employer called Murphey's home and brusquely asked his wife if he could speak with Murphey. When Murphey came to the telephone, the employer asked him to pick up the office mail. Later that day, Murphey called the employer and said he believed the employer had acted in a rude and demanding manner to Murphey's wife over the telephone that morning, and stated that if the employer ever again showed "less than perfect respect" for Murphey's wife, he could look for another associate. Mur-

phey said he would see the employer the next day. The next day the employer discharged Murphey.

## ISSUE

Did the Commissioner's representative erroneously conclude that Murphey's actions did not constitute misconduct disqualifying him from the receipt of unemployment compensation benefits?

## ANALYSIS

Unemployment compensation benefits are not available to an employee who is discharged for misconduct which is connected with his work or which interferes with and adversely affects his employment. Minn.Stat. § 268.09, subd. 1(2) (1984). Minnesota has adopted the following definition of misconduct:

> [T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *.

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973).

Once it has been determined that an employee was discharged, the employer has the burden of proving that the discharge was for misconduct. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 209 N.W.2d 397 (1973). On appeal, this court must defer to the Commission-

er's factual findings, but whether or not those facts support a conclusion of misconduct is a question of law. *Cary v. Custom Coach, Inc.*, 349 N.W.2d 331, 332 (Minn.Ct. App.1984); *Deering v. Unitog Rental Services*, 381 N.W.2d 486, 488 (Minn.Ct.App. 1986).

■ The employer argues first that Murphey's derogatory remark about other clients, made in the presence of his employer and a client, demonstrated a wilful disregard for his employer's interests. As the Commissioner's representative noted, this remark was stupid and tactless and could have had an adverse effect on the employer. However, the Commissioner's representative also noted that the remark was made in a bar over drinks, and the employer never saw fit to draw the remark to Murphey's attention. While a warning may not be required to prove misconduct, it would have strengthened the employer's argument here. *See Auger v. Gillette Co.*, 303 N.W.2d 255, 257 (Minn.1981).

To date, our courts have never indicated that one isolated stupid remark should be held to constitute misconduct. This case is distinguishable from *Pitzel v. Packaged Furniture and Carpet*, 362 N.W.2d 357 (Minn.Ct.App.1985), for example, where an employee-salesman had become "aggressive and offensive" with customers, his personal behavior had become "erratic and disruptive" and he refused to treat customers in accordance with store policy. There, the Commissioner's finding of misconduct was found to be justified. Here, however, Murphey made only one derogatory remark about other clients, and that remark was made during the course of casual conversation. While a single instance of behavior may constitute misconduct if it evidences a sufficient disregard for an employer's interests, (*see Colburn v. Pine Portage Madden Bros., Inc.*, 346 N.W.2d 159, 161 (Minn. 1984); *Blau v. Master's Restaurant Association, Inc.*, 345 N.W.2d 791, 794 (Minn. Ct.App.1984)), Murphey's remark does not appear to have risen to the level of wilfulness, wantonness or equally culpable negligence required by *Tilseth*.

■ The employer also claims that Murphey engaged in misconduct by giving him an "ultimatum" about his behavior towards Murphey's wife. Murphey, on the other hand, characterizes his statement as the type of isolated hot-headed incident governed by *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142 (Minn.1984).

Here, there is no allegation that Murphey raised his voice, "blew his stack", or slammed down the telephone; the employer only characterizes Murphey's action as "angry", "threatening" and "insolent". Nonetheless, this situation should probably be analyzed similarly to a *Windsperger* type of situation since, if Murphey *had* raised his voice or argued with his employer and *Windsperger* were held applicable, it would be incongruous here to find Murphey ineligible for benefits when he did *not* raise his voice or argue. *See Flannigan v. Meadow Lane Health Care Center*, 347 N.W.2d 852, 854 (Minn.Ct.App.1984).

■ The employer also argues that even though Murphey's statement over the telephone was an isolated incident, it was a deliberate act of insubordination, rather than a hot-headed incident. *See Daniels v. Gnan Trucking*, 352 N.W.2d 815 (Minn.Ct. App.1984). In *Daniels*, this court indicated that a single deliberate act of insubordination should be distinguished from a hot-headed incident and may constitute misconduct. There, an employee refused to comply with a request to perform work which he had performed in the past.

The Commissioner's representative noted that Murphey could have responded to his employer's behavior towards his wife in a more diplomatic fashion; however, the representative determined that Murphey's statements to his employer were not abusive or insubordinate. There is evidence in the record to support the Commissioner's decision.

During the hearing, Murphey testified that he had been angry but not intemperate, while the employer claimed that Murphey had indeed been intemperate. The resolution of this conflicting testimony re-

quired that the fact-finder make a determination of credibility, which this court is not in a position to second guess [1]. *Cary*, 349 N.W.2d at 332. Murphey's testimony that he was merely angry and not intemperate would support the Commissioner's representative's conclusion that he was not abusive or insubordinate.

### DECISION

Affirmed.

**1.** *But see Trebelhorn v. Minneapolis Cable Systems, Inc.,* 380 N.W.2d 237 (Minn.Ct.App.1986), questioning the discretion of the Commissioner's representative to make determinations involving credibility when he has no more opportunity than this court to view the witnesses.