Ernest **TUFF**, Relator,

v.

**KNITCRAFT CORP.**, Commissioner of Economic Security, Respondents.

No. C8–94–564.

Court of Appeals of Minnesota.

Aug. 16, 1994.

Review Granted Oct. 14, 1994.

Ernest Tuff, pro se.

Knitcraft Corp., pro se.

Kent E. Todd, Dept. of Economic Sec., St. Paul, for Com'r of Economic Sec.

Considered and decided by AMUNDSON, P.J., and KALITOWSKI and HOLTAN, JJ.

## OPINION

HARVEY A. HOLTAN, Judge *.

Relator Ernest Tuff appeals by certiorari from a Commissioner's representative's denial of Tuff's claim for unemployment compensation benefits. The Commissioner's representative reversed the referee's findings of fact and concluded that Tuff had committed disqualifying misconduct by taking an extended leave of absence without notifying his employer, respondent Knitcraft Corp. We reverse and remand to the Commissioner's representative for findings explaining his reasons for reversing the referee.

## FACTS

Ernest Tuff worked as a technician for Knitcraft for approximately eight years. On September 16, 1993, Tuff asked Sam Shea, Knitcraft's vice president, for some time off. The parties dispute whether Tuff asked for "a few days off," "a couple of days off," or "a leave of absence."

On Friday, October 1, when Tuff had not returned to work, Knitcraft's payroll supervisor wrote Tuff a letter indicating that he had been discharged. Tuff applied to the Department of Economic Security for unemployment compensation benefits, and a referee conducted a hearing.

Tuff testified that he asked Shea "for a leave of absence and a few days off." Shea asked him how long he would be gone, and Tuff replied that he did not know. According to Tuff, Shea said good luck and shook hands. Tuff also testified that he told a coworker, Brian Weaver, that he was taking a "leave of absence." Weaver corroborated Tuff's testimony. Tuff testified that he could have returned to work sooner, but did not do so because he believed he was on a leave of absence.

Shea testified that Tuff never asked for a leave of absence, but asked if he could have "a couple of days" off. Shea stated that he authorized Tuff to take two days off. Shea did not explain why the company did not call

Tuff at home, or why Knitcraft waited over two weeks until October 1 to terminate him.

Following the hearing, the referee issued findings of fact and a decision authorizing Tuff to receive unemployment benefits. The referee specifically found that Tuff had requested a medical leave of absence and "thought he had been granted the leave of absence." The referee found that Knitcraft discharged Tuff because of a "miscommunication." The referee also found that Tuff's separation was due to a serious illness, and that he had made reasonable efforts to retain his employment.

Knitcraft appealed the referee's decision to a Commissioner's representative, who conducted review proceedings and reversed the referee's findings of fact and decision. The Commissioner's representative found that according to Tuff's own testimony, he had asked for "a few days off." The Commissioner's representative found that Tuff was unreasonable in believing that a few days off was the equivalent of two weeks or more. The Commissioner's representative concluded that Tuff's failure to keep Knitcraft informed of his whereabouts constituted misconduct disqualifying him from receiving unemployment benefits.

## ISSUES

I. Does the record support the Commissioner's representative's findings of fact and conclusion that Tuff committed misconduct disqualifying him from receiving unemployment benefits?

II. Did the Commissioner's representative err by failing to consider the serious illness exception to misconduct?

## ANALYSIS

### I.

An individual who is discharged from a job for misconduct is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(b) (1992). "Misconduct" is

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). Good faith errors in judgment or discretion do not constitute misconduct. *Id.* The issue is not whether an employer was justified in discharging an employee, but whether the employee's actions constituted misconduct for unemployment compensation purposes. *McCourtney v. Imprimis Technology, Inc.*, 465 N.W.2d 721, 724 (Minn.App.1991).

■ Absenteeism has been recognized as evidence of misconduct; "[e]ven a single unexcused absence may constitute misconduct." *Del Dee Foods, Inc. v. Miller*, 390 N.W.2d 415, 418 (Minn.App.1986) (quoting *Blau v. Masters Restaurant Assocs., Inc.*, 345 N.W.2d 791, 794 (Minn.App.1984)). Excessive absenteeism may constitute misconduct as a matter of law, even if there has been no showing of wilfulness. *Jones v. Rosemount, Inc.*, 361 N.W.2d 118, 120 (Minn. App.1985). But whether there is a single absence or an excessive number of absences, there must also be evidence of a lack of concern by the employee sufficient to constitute "misconduct" as defined by *Tilseth. See Jones*, 361 N.W.2d at 120. An employee's good-faith errors, as a result of miscommunications between the employer and employee, generally do not constitute misconduct. *See Tuckerman Optical Corp. v. Thoeny*, 407 N.W.2d 491, 493 (Minn.App.1987); *Norman v. Campbell–Logan Bindery, Inc.*, 376 N.W.2d 723, 725 (Minn.App.1985); *Midland*

*Elec., Inc. v. Johnson*, 372 N.W.2d 810, 812 (Minn.App.1985).

The Commissioner's representative found that Tuff asked for a few days off, and not a leave of absence, as the referee found. The Commissioner's representative found that Tuff could not have reasonably believed that Shea had authorized an absence of two weeks or more. The Commissioner's representative did not address the referee's finding that Tuff's extended absence was the result of a miscommunication between the parties. In reversing the referee, the Commissioner's representative did not explain why his credibility determination differed from that of the referee.[1]

■ On appeal, we review the Commissioner's representative's findings in the light most favorable to the decision, and we will not overturn those findings if there is evidence in the record that reasonably tends to sustain them. *Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn.1989). We review the findings of the Commissioner's representative, not those of the referee, even when those findings involve witness credibility. *See Semanko v. Department of Employment Servs.*, 309 Minn. 425, 428, 244 N.W.2d 663, 665 (1976).

But in this case, the Commissioner's representative provided no reason for rejecting the referee's credibility determination. The referee received the evidence, heard the testimony, and gauged witness credibility; the Commissioner's representative did not hear or observe the witnesses. Even though the referee found that Tuff had asked for a leave of absence and that the situation was a result of a misunderstanding, the Commissioner's representative failed to explain why he was rejecting the referee's findings and decision.

■ While detailed and elaborate findings are not essential, a Commissioner's representative should provide some explanation of the reasons for rejecting a referee's findings, or meaningful review becomes difficult. The following analysis is persuasive:

---

1. The Commissioner's representative did find that Tuff himself testified that he had asked for a few days off. But Tuff testified in that sentence that he asked "for a leave of absence and a few days off."

When an agency rejects or significantly deviates from the hearing examiner's findings, it should explain, on the record, its reasons for doing so. Failure to do so evidences the agency's desire to exercise its will and not its judgment. A hearing examiner's report and recommendations should not be summarily rejected without reasons.

*Beaty v. Minnesota Bd. of Teaching*, 354 N.W.2d 466, 472 (Minn.App.1984); *see also Trebelhorn v. Minneapolis Cable Sys., Inc.*, 380 N.W.2d 237, 239 (Minn.App.1986) (expressing "deepening reservations" about deferring to Commissioner's representative's decision that rejects referee's findings based on witness credibility).

## II.

The legislature has established a statutory exception to misconduct where an individual is separated from employment "due to personal, serious illness provided that such individual has made reasonable efforts to retain employment." Minn.Stat. § 268.09, subd. 1(c)(2) (Supp.1993).

The referee concluded that the serious illness exception was applicable to the facts of Tuff's situation. The Commissioner's representative's findings and decision did not address the serious illness exception to misconduct. On remand, if necessary, the Commissioner's representative is directed to make findings on this issue.

We note that Tuff has included materials in his appendix that were not made a part of the record below. We have not considered this new evidence on appeal. *See Appelhof v. Commissioner of Jobs & Training*, 450 N.W.2d 589, 591 (Minn.App.1990).

## DECISION

We reverse and remand to the Commissioner's representative to explain the reasons for rejecting the referee's findings.

**Reversed and remanded.**