**Ruth A. DENNY, Relator,**

v.

**MINNEAPOLIS AMERICAN INDIAN CENTER, and Commissioner of Economic Security, Respondents.**

No. C0-94-770.

Court of Appeals of Minnesota.

Nov. 29, 1994.

Review Granted Dec. 20, 1994.

---

Ruth A. Denny, pro se.

Ron Rosenbaum, George R. Dunn, Tilton & Rosenbaum, Saint Paul, for Minneapolis American Indian Center.

Kent E. Todd, Saint Paul, for Commissioner of Economic Sec.

Considered and decided by AMUNDSON, P.J., and DAVIES and HARTEN, JJ.

## OPINION

AMUNDSON, Judge.

Relator Ruth Denny appeals by certiorari from the denial of her claim for reemployment insurance benefits. The Commissioner's representative reversed the referee's findings of fact, concluding that Denny's failure to attend certain staff meetings, among other conduct, constituted misconduct which disqualified her from receiving benefits. We reverse and remand to the Commissioner's representative for findings explaining her reasons for reversing the referee.

## FACTS

Relator Ruth A. Denny worked for respondent Minneapolis American Indian Center (the Center) as editor of its newspaper, *The Circle*, for about three and one-half years. Among her many duties during that period, she assigned, accepted and wrote articles, and managed the newspaper's daily affairs. During Denny's tenure, *The Circle* received numerous awards for journalism and

achieved a national reputation, especially in the Native American community.

While Denny was employed at the Center, the annual operating deficit of *The Circle* increased substantially. The Center's executive director, Frances Fairbanks, tried to arrange for meetings with the controller and Denny in order to address the problem of the growing deficit. Fairbanks scheduled the meetings regularly and notified Denny by memorandum of all upcoming meetings.

Denny claims that for various reasons, she often did not receive notice of a meeting until it was too late for her to attend or to fit the meeting into her schedule. She also claims that if the meetings had been important, someone at the Center could have informed her in person, since all of the relevant parties' offices were in the same building. On at least one occasion, when Denny was on vacation, she sent a staff member to such a meeting. There also was some disagreement over the reasons why Denny was unable to prepare some financial reports on a timely basis.

On November 4, 1993, Fairbanks personally delivered a termination memorandum to Denny. The memorandum said that Denny had repeatedly ignored memoranda, refused to reschedule or explain absences from meetings, and that:

> It is clear from your actions that you do not want to communicate with me * * * to improve the management and financial condition of the Circle.

The Center later gave its reason for dismissing Denny as "insubordination." According to a "Table of Penalties" in the Center's personnel policy manual, a first offense of insubordination carries a penalty of a three to ten day suspension. Another provision in the manual, however, says that discipline should account for "motivating factors" and that the table of penalties is a guideline only. Denny never received a suspension before her termination.

Denny then applied for reemployment insurance benefits. A Department adjudicator found that because Denny refused to attend mandatory meetings, the Center dismissed her for willful misconduct.

Denny requested a hearing after which the referee reversed. The referee found that Fairbanks notified Denny of meetings by putting memoranda in her mail, and that as a result of the volume of Denny's mail, she lost memoranda for at least six meetings which she did not attend. The referee also noted that Fairbanks could easily have informed Denny personally of the meetings, and that Denny was "a very hard working employee."

The Center appealed to a Commissioner's representative, who reversed the referee. The Commissioner's representative, in her findings, emphasized the financial condition of the newspaper and Denny's nonattendance at meetings. Unlike the referee, the representative found that Denny "acknowledged that she understood that she was expected to attend these meetings." The representative never addressed the finding of the referee that Denny had a good excuse for missing some meetings. By writ of certiorari, Denny now challenges the decision of the Commissioner's representative.

## ISSUES

1. Does the record adequately support the Commissioner's representative's conclusion that Denny committed misconduct?

2. Did the Commissioner's representative adequately explain her reversal of the referee?

## ANALYSIS

### I. *Misconduct*

In reemployment insurance appeals, we generally apply a dual standard of review. We uphold the Commissioner's representative's factual findings where there is evidence reasonably tending to sustain them. *Kratochwill v. Los Primos,* 353 N.W.2d 205, 207 (Minn.App.1984). On the other hand, we review de novo, as a question of law, whether or not a given set of facts found by the Commissioner's representative constitutes misconduct. *Ress v. Abbott Northwestern Hosp.,* 448 N.W.2d 519, 523 (Minn.1989). The record contains evidence that could support both the Commissioner's representative's findings of fact and her conclusions of

law, although both are subject to the requirements in section II below.

Under Minn.Stat. § 268.09, subd. 1(b) (1992), a former employee is disqualified from receiving reemployment insurance benefits if the employer discharged the employee for misconduct. In *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374, 204 N.W.2d 644, 646 (1973), the supreme court defined misconduct as "conduct evincing * * * wilful or wanton disregard of an employer's interests." (Citations omitted.)

This court has defined misconduct to include a failure to respond to a number of memoranda requiring attendance at meetings. *Woodward v. Interstate Office Sys.*, 379 N.W.2d 177, 180 (Minn.App.1985). In *Woodward*, this court ruled that an employee's deliberate failure to meet with a supervisor to discuss problems in the department was evidence of his "lack of concern for * * * his job." *Id.* Similarly, according to the Commissioner's representative's findings, Denny deliberately refused requests to meet and discuss problems in her department.

The findings of the Commissioner's representative come from memoranda and testimony which are properly in the record. The representative found that Denny "acknowledged that she understood she was expected to attend" meetings, that she "was put on notice that she would be expected to attend all upcoming Monday meetings," and that she did not attend several meetings or request that any be rescheduled. We do not disturb these factual findings for lack of evidence. This, however, does not end our inquiry.

## II. *Explanation of Reasons*

 Traditionally, appellate courts have deferred to factual findings of a Commissioner's representative in reemployment insurance cases. *See Tester v. Jefferson Lines*, 358 N.W.2d 143, 145 (Minn.App.1984), *pet. for rev. denied* (Minn. Mar. 13, 1985). Thus, a Commissioner's representative is the finder of fact even for witness credibility issues. *But cf. Trebelhorn v. Minneapolis Cable Sys. Inc.*, 380 N.W.2d 237, 239 (Minn.App.1986) (this court expressed "deepening reservations" about the rule requiring deference to the Commissioner's representative in cases

where the representative rejected a referee's findings that are based on credibility determinations). In general, we will uphold a Commissioner's representative's findings of fact, even if they conflict with those of the referee, if there is substantial evidence supporting them. *Ress*, 448 N.W.2d at 523.

 This court recently ruled, however, that a Commissioner's representative must specify the reasons for rejecting a referee's factual findings, especially if those findings involve witness credibility, otherwise meaningful review becomes difficult. *Tuff v. Knitcraft Corp.*, 520 N.W.2d 483, 486 (Minn.App. 1994), *pet. for rev. granted* (Minn. Oct. 14, 1994).

In *Tuff*, the employee claimed that he requested "a few days off" or "a leave of absence" from his supervisor, while the supervisor claimed that he heard "a couple of days off," meaning two days. The employee did not come to work for over two weeks and was fired. The referee ruled that the incident was a "miscommunication," not misconduct, thereby entitling the employee to collect benefits. *Id.* The employer appealed and the Commissioner's representative rejected the referee's findings without addressing the referee's finding that a miscommunication between the employee and his supervisor caused the employee's dismissal. *Id.* Here, as in *Tuff*, the Commissioner's representative did not directly explain why she rejected certain specific findings of the referee. Instead, she only gave her own findings.

The *Tuff* court found the following rule, from general Minnesota administrative law, persuasive:

> When an agency rejects or significantly deviates from the hearing examiner's findings, it should explain, on the record, its reasons for doing so. Failure to do so evidences the agency's desire to exercise its will and not its judgment.

*Id.* at 487 (quoting *Beaty v. Minnesota Bd. of Teaching*, 354 N.W.2d 466, 472 (Minn.App. 1984)). This principle is especially important in cases where witness credibility is central. In *Tuff*, whether the supervisor's or the employee's version of the leave discussion was

more accurate was essential for deciding the case.

In this case, the intent, and therefore the relative credibility of Denny and Fairbanks are central to the outcome. The referee, who was present at the hearing, was best situated to gauge credibility. Therefore, the Commissioner's representative must explain why she chose not to rely on the referee's determination of that credibility.

We find the reasoning in *Tuff* persuasive. Therefore, we conclude that where a determination of witness credibility is at stake, a Commissioner's representative must explain why the referee's findings merit reversal.

### DECISION

We reverse the Commissioner's representative's decision and remand for further consideration. If the Commissioner's representative rejects the referee's finding, the representative's decision must be explained.

**Reversed and remanded.**