EUGENE LUMPKIN AND ANOTHER v.
NORTH CENTRAL AIRLINES, INC.

209 N. W. 2d 397.

July 6, 1973—No. 43903.

*Maslon, Kaplan, Edelman, Borman, Brand & McNulty, John C. McNulty,* and *Andris A. Baltins,* for relator.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, *Peter C. Andrews,* Assistant Attorney General, and *William A. Peters,* Special Assistant Attorney General, for respondent commissioner.

Heard before Knutson, C. J., and Otis, Kelly, and Gillespie, JJ.

Robert B. Gillespie, Justice.*

North Central Airlines, Inc., petitioned for a writ of certiorari to review a decision of the Minnesota Department of Manpower Services. Claimant, Eugene Lumpkin, was discharged by his employer, North Central Airlines, Inc., on June 22, 1971, after approximately 11 years of work with the airline. Lumpkin's separation notice stated that he was discharged for pilferage constituting misconduct.

Claimant subsequently applied for unemployment benefits. A claims deputy for the Department of Manpower Services determined that Lumpkin was involuntarily terminated from his employment for reasons other than proven willful misconduct connected with his work. Pursuant to Minn. St. 268.10, subd. 2, relator appealed to an appeal tribunal of the Department of Manpower Services. The appeal, after an evidentiary hearing, affirmed the claim deputy's determination, and relator then appealed the tribunal's decision, as authorized by Minn. St. 268.10, subd. 5, requesting a review by the commissioner. The commissioner found that relator had not sustained the burden of proving by a fair preponderance of the evidence that the acts of claimant complained of constituted misconduct and affirmed the decision of the appeal tribunal.

At the time of claimant's termination, he was employed as the lead cleaner in relator's catering service. For several months

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

prior to claimant's discharge, relator had experienced losses of liquor used in its flight service. The airline hired Pinkerton detectives to watch the employees. Claimant was under surveillance for a number of days but nothing was discovered. At about 9 p.m. on June 20, 1971, George Karnas and Bill Runkel, North Central employees, decided to go to the airport during their off-duty hours to see how the Pinkerton men were doing and to look around. Karnas testified that Lumpkin was his prime suspect. Karnas stationed himself in the flight kitchen office from which he observed claimant step from the back of a company van with what appeared to be a jacket wrapped around his arm. At that moment, Karnas was summoned to the phone to speak to Runkel who had stationed himself along the post road. Karnas, over objection, testified that Runkel told him that he had observed Lumpkin drive a company van down Military Road, stop, and make two trips to the side of the road to deposit some articles. The two men returned to the site of the stop and discovered several boxes filled with approximately 100 miniature bottles of liquor. They decided to wait along the road. About 10:30 p.m., claimant drove up in his own automobile to the area where the liquor was hidden. Karnas approached the car and observed claimant move from the passenger side to the driver side and at the same time make a "throwing motion."

Karnas testified that he confronted claimant and that claimant admitted that he had taken the liquor and requested that he be given a break. When asked if he had company material in a brown bag in the car, claimant replied that he did not and offered to submit to an on-the-spot search of his car. Karnas declined. Claimant's testimony substantiated that of Karnas regarding the bag and the offer to allow a search, but claimant denied making any admissions and denied knowledge of the theft. He testified that he had been on the road to meet a woman, not his wife. Karnas ordered claimant, who had just finished overtime work, to return to the guard shack and write a report. Claimant did not do so and did not return to work for 2 days. Karnas testi-

fied that claimant was not due to return to work until the 22nd. Over counsel's objection on the grounds of relevancy, Karnas further testified that claimant had previously been suspended for 30 days for delaying a flight.

A hearing was held before a system board of adjustment, as provided by the Railway Labor Act, 45 USCA, § 151, et seq., to consider claimant's discharge. On August 6, 1971, the board upheld claimant's discharge; however, no record of those proceedings was presented to the appeal tribunal or the commissioner of the Department of Manpower Services. Claimant also filed discrimination charges with the Minnesota Department of Human Rights, but on March 29, 1972, the commissioner thereof made a determination of no probable cause. That determination and the testimony on which it was based were not before the appeal tribunal and were not a part of the record upon which the commissioner rendered his decision.

The appeal tribunal found that claimant was involuntarily separated from his employment for reasons other than misconduct and thus claimant was not disqualified for benefits. The tribunal found that the employer had not established beyond a reasonable doubt that claimant had stolen the items. Relator then appealed to the commissioner. The commissioner, upon consideration of the evidence in the record and arguments of counsel, approved and adopted the findings of fact and decision of the appeal tribunal in his order. In a short memorandum he noted that the burden is on the employer to show by a fair preponderance of the evidence that the acts complained of constituted misconduct and that the employer had not sustained that burden.

1. Does the evidence sustain the finding of the commissioner that the claimant was involuntarily separated from his employment for reasons other than misconduct? We so find.

The burden to prove that the employee is disqualified from receiving benefits under Minn. St. 268.09, subd. 1, is upon the employer. The employer must establish by the greater weight of the evidence that the employee was guilty of the misconduct

charged. Johnson v. Ford Motor Co. 289 Minn. 388, 184 N. W. 2d 786 (1971); Kantor v. Honeywell, Inc. 286 Minn. 29, 31, 175 N. W. 2d 188, 190 (1970); Adelsman v. Northwest Airlines, Inc. 267 Minn. 116, 125 N. W. 2d 444 (1963). In the instant case relator discharged claimant for "pilferage" or "removal of company materials for personal use," more specifically, with theft of liquor. Claimant denied the charge. At the hearing before the appeal tribunal, only the testimony of one accuser was offered. Absent were relator's other involved employees. Their testimony under oath, subject to cross-examination, might have been of some persuasive value to the finder of fact. Without such testimony, the finder of fact, ultimately the commissioner, was not persuaded that the relator had proved its case.

This court has said that the findings of the commissioner in a proceeding of this nature will be reviewed in the light most favorable to the decision below, and where there is evidence reasonably tending to sustain them, his findings will not be disturbed. Kantor v. Honeywell, Inc., *supra;* Nyberg v. R. N. Cardozo & Brother, Inc. 243 Minn. 361, 67 N. W. 2d 821 (1954). The scope of the review is limited to a consideration of whether the department kept within its jurisdiction; whether it proceeded on an erroneous theory of law; whether its action was so arbitrary and unreasonable as to represent its will and not its judgment; and whether the decision of the department is without evidence to support it. Johnson v. Wilson & Co. 266 Minn. 500, 124 N. W. 2d 496 (1963).

This court in Tilseth v. Midwest Lumber Co. 295 Minn. 372, 374, 204 N. W. 2d 644, 646 (1973), cited with approval the definition of misconduct set out by the Wisconsin Supreme Court in Boynton Cab Co. v. Neubeck, 237 Wis. 249, 259, 296 N. W. 636, 640 (1941):

"* * * [T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer

has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *.''

The evidence before the commissioner in the instant case as to whether the claimant was guilty of misconduct in connection with his work, i. e., guilty of stealing liquor, is in direct conflict. No other reasons for termination were specified in employer's notice. During the appeal hearing, some evidence was presented (over objection) that claimant had been suspended for delaying a flight. Claimant had been disciplined for this act and had paid the penalty of suspension. This alleged act of misconduct was not relevant to the issue before the hearing tribunal. Relator's contention that claimant had refused to report for work for 2 days (a charge not contained in the termination notice and, therefore, also irrelevant) clearly was not sustained when relator's fleet service manager admitted that claimant was not due back to work during these 2 days. Therefore, viewing the evidence and the proceedings in the light most favorable to the decision below, we find there was evidence reasonably tending to sustain the decision.

2. Must the commissioner of the Department of Manpower Services, upon discovering that the appeal tribunal has applied an erroneous burden of proof, reverse and remand the matter for a new hearing?

When one appeals from the determination of a claims deputy under Minn. St. 268.10, subds. 2 and 3, he is afforded a de novo hearing before an appeal tribunal in which the tribunal shall affirm, modify, or set aside the initial determination. Minn. St.

268.10, subd. 5, provides for review by the commissioner of the tribunal's decision in part as follows:

"* * * Upon review, the commissioner or his duly authorized representative may affirm, modify, or set aside any finding of fact or decision, or both, of the appeal tribunal on the basis of the evidence previously submitted in such case, or remand such matter back to the appeal tribunal for the taking of additional evidence and new findings and decision based on all of the evidence before it."

The appeal tribunal in weighing the facts applied the wrong burden of proof. Normally an appellate court is not empowered to make or modify findings of fact and is thereby limited in its scope of review. Thus, if a trial court has improperly weighed the facts, the appellate court must remand to the trial court for further consideration. In unemployment compensation cases, however, the legislature empowered the commissioner to modify or set aside any finding of fact or decision on the basis of the evidence in the record. The commissioner is implicitly empowered to consider and weigh the evidence in the case, apply the correct law, and render his decision accordingly. Where the commissioner by statute has the authority to so review the case, there would be little purpose in remanding the case to the tribunal for a reweighing of the evidence at that level. The commissioner made it clear that he used the proper burden of proof and concluded that relator had not met that burden.

3. Was the decision of the system board of adjustment res judicata as to the case before the Department of Manpower Services?

The adjustment board's decision and the record of the proceedings before it were not offered or received in evidence before the appeal tribunal or the commissioner. The record before us contains only the statement of counsel for relator that such a hearing had been held and an order issued under the Railway Labor Act upholding the discharge of the claimant herein. There being no proof in the record before us as to the adjustment

board's findings or the issues litigated before that board, its decision is not res judicata in the Manpower Services hearing with which we are concerned.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.