Robert G. HARRINGER, Respondent,

v.

AA PORTABLE TRUCK & TRAILER REPAIR, INC., Relator, Department of Economic Security, Respondent.

No. C7-85-1634.

Court of Appeals of Minnesota.

Dec. 31, 1985.

Robert G. HARRINGER, pro se.

Ronald G. Black, Elk River, for relator.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by PARKER, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

PARKER, Judge.

Relator AA Portable Truck & Trailer Repair, Inc., seeks review of a determination by the Commissioner of Economic Security that Robert Harringer was discharged for reasons other than misconduct. We affirm.

## FACTS

Robert Harringer had been working for AA Portable Truck & Trailer Repair, Inc., for approximately four months when he was discharged. He applied for unemployment compensation, and a claims deputy awarded him benefits, determining that he had not been discharged for proven willful misconduct.

AA appealed, and a hearing was held before a Department referee. Harringer appeared and testified; the president and vice president of AA were also present. The vice president testified that Harringer was discharged "mainly" because he did not perform his work within the average times for jobs, compiled in a book published by Motor Trend. In addition to his slowness, AA was unhappy with Harringer's overall work performance. One incident in particular involved the amount of oil Harringer had put in a truck. The vice president testified that Harringer had filled the truck with an excessive amount of oil; however, Harringer testified that he had been instructed to put too much oil in the truck. Harringer also testified that he had performed his work to the best of his ability.

AA also claimed that Harringer falsified a work report. The vice president testified that Harringer had made a service call which had taken only an hour and 20 minutes but had submitted a work order indicating that he had worked two hours and

15 minutes. Harringer, however, testified that the time he had indicated in his report included time spent loading tools and parts into the truck, as well as travel and service time. He stated that the time indicated on the work order was correct.

The vice president also testified that Harringer had been absent or tardy on several occasions, had exhibited a display of temper in front of a customer, and had taken his uniforms home upon being discharged, although Harringer denied that he had done so.

After the hearing, the referee determined that Harringer had been discharged for poor work performance and for projecting a poor image. The referee noted that Harringer had performed his work to the best of his ability but was unable to measure up to AA's standards.

AA appealed, and a Commissioner's representative affirmed the determination by the referee that Harringer's separation was not due to misconduct. The Commissioner's representative agreed that the incidents involving the excessive amount of oil, Harringer's display of juvenile behavior, and his improper handling of a service call were simply evidence that Harringer did not measure up to AA's requirements.

## ISSUE

Did the Commissioner's representative erroneously determine that Harringer was discharged for poor work performance and not for misconduct at a level sufficient to deny him unemployment compensation?

## DISCUSSION

Minn.Stat. § 268.09, subd. 1(2) (1984), states that a person is not entitled to receive unemployment compensation benefits if he was "discharged *for* misconduct." *id.* (emphasis supplied). This language suggests that an employer who alleges employee misconduct must prove[1] that such conduct was in fact the cause of the employee's dismissal. This court reached a

---

1. An employer has the burden of proving that an employee is disqualified from receiving ben-

efits. *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973).

similar conclusion in *Foy v. J.E.K. Industries,* 352 N.W.2d 123 (Minn.Ct.App.1984) *pet. for rev. denied* (Minn. Nov. 8, 1984), indicating that an award of unemployment compensation benefits must turn on the actual cause of separation:

> Although there is evidence of a 13 percent reduction in Foy's wages, the commissioner's determination that Foy involuntarily terminated his employment due to a wage decrease of 31 percent is unsupported by the record. Rather, the only conclusion which the evidence would reasonably tend to support is that Foy voluntarily terminated his employment because he was dissatisfied with his employer, and because his employer refused to offer him a buy-sell agreement.

> The commissioner's decision [awarding benefits to Foy] is reversed.

*Id.* at 125. Courts from other jurisdictions have expressly held that an employee's misconduct is irrelevant to a determination of unemployment compensation benefits if that conduct was not in fact the reason for the employee's discharge. *See, e.g., Hawkins v. Leach,* 115 Ohio App. 259, 185 N.E.2d 36 (Ohio Ct.App.1961); *Mancini v. Commonwealth, Unemployment Compensation Board of Review,* 50 Pa. Commw. 266, 412 A.2d 702 (Pa.Commw.Ct. 1980).

In the present situation, after reviewing the evidence submitted by both parties, both the referee and the Commissioner's representative determined that the actual cause of Harringer's discharge was his poor work performance, which does not constitute misconduct. *See Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973). AA does not claim that Harringer's poor work performance should be characterized as misconduct. Rather, AA argues that Harringer was discharged for other reasons in addition to his poor job performance and that the Commissioner's failure to address these other reasons was erroneous.

The record indicates that AA initially claimed Harringer was discharged for poor work performance. In a statement submitted to the Department, the president of AA claimed that Harringer was discharged "for being slow and having a bad attitude and not changing after being warned." In response to a request for wage and separation information, AA stated that Harringer cost the company too much money due to nonchargeable time and that he also falsified a work report.

Although at the hearing AA testified that Harringer was discharged for additional reasons, the Commissioner's representative's determination that Harringer was discharged for poor work performance is supported by AA's initial statements. The scope of appellate review in unemployment compensation cases is limited. The evidence must be viewed in the light most favorable to the Commissioner's findings, *White v. Metropolitan Medical Center,* 332 N.W.2d 25, 26 (Minn.1983), and the only question for this court is whether the record contains evidence sufficient to sustain those findings. *Id.* Factual disputes are to be resolved by the Commissioner, *Nyberg v. R.N. Cardozo & Brother, Inc.,* 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954), and this court cannot reweigh the evidence to determine where the preponderance lies. *Id.* Because the record in the present case supports the finding that Harringer was discharged for poor work performance, we decline to disturb the Commissioner's decision.

Implicit in the Commissioner's decision that Harringer was discharged for poor work performance is a determination that Harringer was not discharged for the additional reasons claimed by AA.

## DECISION

The Commissioner's determination that Harringer was discharged for poor work performance and not for misconduct is affirmed.

Affirmed.