**Walter KNUTSON, Relator,**

v.

**DJM TRANSPORT, INC., Commissioner of Jobs and Training, Respondents.**

**No. C0–87–1057.**

Court of Appeals of Minnesota.

Oct. 13, 1987.

Walter Knutson, pro se.

Thomas C. Power, Minneapolis, for DJM Transport, Inc.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Considered and decided by NORTON, P.J., and MULALLY,* and LOMMEN,* JJ., with oral argument waived.

## OPINION

NORTON, Judge.

Relator Walter Knutson quit his job with respondent DJM Transport and applied for unemployment compensation benefits. A Commissioner's representative denied Knutson benefits, relying on a prior district court decision and concluding that Knutson did not have good cause to quit his job. We reverse.

## FACTS

Walter Knutson began working as an over-the-road truck driver for DJM in September 1985. Knutson was hired as an

employee, not as an independent contractor.

When Knutson was hired, he signed an employment agreement that stated he would be "responsible for all shortages." The agreement also provided that he would be responsible for his food, lodging, and travel expenses, and any "abuse" of DJM's truck.

On March 29, 1986, Knutson quit his job, claiming DJM had offset shortages from his paychecks without his approval, had failed to pay him in a timely fashion, had breached a promise to pay for his lodging when DJM's truck broke down, and had refused to remedy the problems when he complained.

After Knutson quit, DJM withheld his last paycheck because Knutson had damaged DJM's truck. Knutson filed for unemployment compensation benefits. He also commenced a conciliation court action against DJM to recover the money that had been withheld from his paychecks. DJM counterclaimed for the damage sustained by its truck. Knutson obtained a judgment, and DJM appealed. The district court, relying upon the employment agreement, concluded that Knutson was liable for all shortages, that DJM's deductions for shortages were proper, and that DJM was entitled to offset the damage to its truck against commissions and costs owed Knutson. The court ordered judgment for DJM and against Knutson in the amount of $303.66.

The district court judgment was entered on September 18, 1986, and thereafter Knutson's claim for unemployment compensation was denied on the basis that he did not have good cause to quit his job. Knutson appealed to a Department referee, who conducted a hearing. Knutson introduced documents indicating that on October 11, 1985 he had paid a $40 loading fee out of his own pocket, for which he had never been reimbursed; that on March 14, 1986 DJM had deducted shortages of at least $369.91 from his paycheck without his approval; and that he had not received payment for his work in November and

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

December until the middle of the following March. He also testified that upon three or four other occasions, his paychecks had been delayed; that DJM had breached a promise to reimburse him for lodging and meals when his truck had broken down; that he had complained to DJM several times about the problems before he quit; and that there were other non-documented problems.

DJM offered no testimony. Following the hearing, the referee determined that DJM had breached its duties to Knutson by failing to pay him on time and by failing to abide by its promise to reimburse him for lodging expenses when his truck broke down. The referee also concluded that DJM had no legal right to deduct losses from Knutson's wages.

DJM appealed to a Commissioner's representative, who reversed the referee's findings and conclusions, relying upon the agreement Knutson had signed when he was hired, and concluding that the district court judgment regarding the shortages was res judicata. The Commissioner's representative also found that Knutson was unable to "provide specifics" about late paychecks. The Commissioner's representative concluded Knutson did not have good cause to quit.

### ISSUES

1. Does the district court decision bar review of Knutson's claims?

2. Did the Commissioner's representative err by concluding that Knutson did not have good cause to quit?

### ANALYSIS

1. The Commissioner's representative stated in his memorandum:

> The doctrine of [res] judicata applies to this case. The [district] court concluded that the deductions for the shortages were proper. That matter is not subject to further litigation.
>
> \* \* \* \* \* \*
>
> It cannot be held good cause attributable to the employer for the claimant to quit employment, when the court has found

that the deductions are proper. That matter is not subject to relitigation before this Department.

The Commissioner erred by applying the doctrine of res judicata.

> The effect of res judicata on a judgment or final order has at least two distinct and important aspects: (1) merger or bar; and (2) collateral estoppel. The principles of merger and bar operate where a subsequent action or suit is predicated on the same cause of action which has been determined by a judgment, no matter what issues were raised or litigated in the original cause of action. On the other hand, the principle of collateral estoppel operates as to matters which were actually litigated and determined by, and essential to, a previous judgment, irrespective of whether the subsequent action is predicated upon the same or a different cause of action. In short, one stands for claim preclusion, the other for issue preclusion.

*Hauser v. Mealey*, 263 N.W.2d 803, 806 (Minn.1978) (citations omitted).

Knutson's action for unemployment benefits is not predicated on the same cause of action that was before the district court. That matter was based on Knutson's employment contract, from which the district court concluded the payroll deductions were proper. Nor did the district court determine the issue being litigated here, i.e., whether the definition of "good cause" applies to Knutson's situation. The term "good cause" is one of art, used and applied in the context of the unemployment compensation statutes. Indeed, the district court did not have the authority to decide the issue, which is now properly before us. The issue is not res judicata, but must be determined by reference to the unemployment laws and the facts existing at the time Knutson quit.

2. The statute governing wage deductions provides:

> No employer shall make any deduction, directly or indirectly, from the wages due or earned by any employee, who is not an independent contractor, for lost or stolen property, damage to property, or to re-

cover any other claimed indebtedness running from employee to employer, unless the employee, after the loss has occurred or the claimed indebtedness has arisen, voluntarily authorizes the employer in writing to make the deduction or unless the employee is held liable in a court of competent jurisdiction for the loss or indebtedness.

\* \* \* \* \* \*

Any agreement entered into between an employer and an employee contrary to this section shall be void.

Minn.Stat. § 181.79, subd. 1 (Supp.1985).

■ Under the statute, DJM had no right to make deductions from Knutson's paycheck unless: (a) Knutson agreed to the deductions in writing after each occurrence, or (b) Knutson was held liable in a court of law. Neither of these alternatives had occurred at the time Knutson quit his job; thus, the deductions were illegal.

■ An employee who is instructed to engage in illegal and immoral conduct has good cause to quit if he or she first gives sufficient notice of his or her objections to the employer. *Burtman v. Dealers Discount Supply,* 347 N.W.2d 292 (Minn.Ct. App.1984), *pet. for rev. denied* (Minn. July 26, 1984). Here, the record indicates Knutson complained to DJM before he quit. Although DJM did not request that Knutson violate the law, DJM itself violated the law.

■ Upon several occasions, this court has held that an employer's breach of its duties to an employee constitutes good cause for that employee to quit. *See, e.g., Rutten v. Rockie International, Inc.,* 349 N.W.2d 334 (Minn.Ct.App.1984). We conclude that DJM's violation of the statute on authorized wage deductions constituted good cause for Knutson to quit.

The Commissioner also found that Knutson was unable to "provide specifics" about late payments of his checks. In fact, however, Knutson introduced into the record a copy of his March 14 pay stub, indicating payment for November 29 through December 13. The fact that DJM offered no testimony at the hearing to rebut Knutson's evidence casts doubt upon the validity of the Commissioner's reasoning.

## DECISION

The record establishes that Knutson had good cause to quit his job when DJM made illegal deductions from his paycheck.

Reversed.