**Charles E. HANSEN, Relator,**

v.

**C.W. MEARS, INC., Commissioner of Jobs and Training, Respondents.**

No. C0–92–36.

Court of Appeals of Minnesota.

May 26, 1992.

Review Denied July 16, 1992.

Norman J. Baer, Fruth & Anthony, Minneapolis, for relator.

Paul W. Chamberlain, Chamberlain Law Firm, Wayzata, for respondent C.W. Mears, Inc.

Lee B. Nelson, St. Paul, for respondent Commissioner of Jobs and Training.

Considered and decided by KLAPHAKE, P.J., and HARTEN and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Acting Judge *.

Relator Charles E. Hansen was terminated from his position as vice-president of respondent C.W. Mears, Inc. Relator applied for unemployment compensation benefits and was denied. He appealed and received a hearing; the referee reversed the initial decision. Respondent appealed, and the Commissioner of the Department of Jobs and Training reversed, again denying relator benefits. We reverse and reinstate the referee's decision awarding relator unemployment compensation benefits.

## FACTS

Relator began working for respondent in December, 1988. The president, director and only shareholder of respondent is Charles W. Mears ("Mears"). Relator became vice-president and earned approximately $60,000 per year. He also obtained a bonus plan or deferred compensation agreement, agreed to in October 1990. The plan entitled relator to 35 percent of the increase in the owner's equity in the company. Respondent's financial officer, David Fasching, had a similar plan entitling him to 10 percent of the increase in equity. Relator and Fasching disagreed with Mears regarding interpretation of the plan and how quarterly losses were to affect valuation of the bonuses.

In June of 1991, Mears offered to sell the company to relator and Fasching. Relator's impression of the offer was that if they did not buy the company at Mears' price, they would be fired and forced to litigate to receive their bonuses. Relator feared Mears would "dissipate the available assets of the corporation rather than pay them their deferred compensation entitlement," as found by the referee. Under the plan, relator claims he is entitled to $234,278 and Fasching claims $64,525, for a total of $298,803. The agreement indicated the bonus was to be paid within thirty days

after the end of the quarter when the termination occurred.

Relator had the authority to establish and maintain financial accounts for respondent as part of his responsibilities as vice-president. On June 20, relator opened a new personal account in his name at Piper, Jaffray & Hopwood and transferred $290,000 from respondent's investment account at that firm (which contained $298,000) to the new account, to prevent Mears from dissipating assets. Relator stated he did not intend to take the money, but he felt he could not trust Mears to segregate the funds to assure they would receive their bonuses. Relator did not open a new corporate account because Mears' signature was required.[1]

On June 28, a Friday evening, Mears replaced the locks on the company offices. On July 1, the next Monday, relator asked Mears if he had been fired. Mears responded, "Yes, you could interpret it that way." Mears stated he did not feel they could continue to work together. Mears claimed he later told relator he was just suspended, and that he felt something was going on, that he could not trust relator, and that relator was undermining his authority.

Mears first learned of the transfer of funds on July 12 when he received a letter from relator's attorney indicating the funds had been segregated for payment of claims on the disputed bonus plan. In response, Mears sent a letter to relator on July 12 purporting to terminate his employment. The referee and the commissioner found relator was terminated on July 1. Respondent did not appeal this finding.

On July 20, relator was notified he would be denied unemployment compensation benefits because he was discharged for gross misconduct for misappropriation of funds. Relator appealed and received a hearing. The referee reversed, finding there was no causal connection between

---

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

1. This transaction is the subject of ongoing civil litigation in Hennepin county. The trial court issued a temporary restraining order requiring relator to return the money from the account, which this court affirmed. *See C.W. Mears, Inc. v. Fasching,* No. C6–91–1438 (Minn.App. Jan. 21, 1992).

the misconduct and the termination. Mears appealed to the Commissioner of Jobs and Training pursuant to Minn.Stat. § 268.10, subd. 5 (1990). The commissioner reversed on December 11, 1991 and denied benefits, finding relator had committed gross misconduct connected with his work.

## ISSUE

Did the commissioner err by denying an employee unemployment compensation benefits because of discharge for gross misconduct where the employer became aware of the conduct after the employee was discharged?

## ANALYSIS

■ An agency's decisions are given some deference in its area of expertise and field of technical training, education and experience. *James v. Commissioner of Economic Sec.*, 354 N.W.2d 840, 844 (Minn. App.1984), *pet. for rev. denied* (Minn. Dec. 20, 1984) (quoting *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977)). However, when reviewing legal conclusions by an agency, this court need not defer to the agency's decision. *McGowan v. Executive Express Transp. Enters.*, 420 N.W.2d 592, 594 (Minn.1988); *Talberg v. Commissioner*, 370 N.W.2d 686, 688 (Minn.App. 1985). No party disputes the commissioner's factual findings.

■ Unemployment compensation benefits are intended for individuals who are unemployed through "no fault of their own." Minn.Stat. § 268.01 (1990). The statute is interpreted liberally in favor of awarding benefits. *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221–22

(Minn.1981). Disqualification provisions are construed narrowly. *McGowan*, 420 N.W.2d at 595.

■ A person who is terminated for gross misconduct is not entitled to receive unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(d) (1990). Gross misconduct is defined as

> misconduct involving assault and battery or the malicious destruction of property or arson or sabotage or embezzlement or any other act, *including theft, the commission of which amounts to a felony or gross misdemeanor.*

*Id.* (emphasis added). The employer has the burden of proving the employee committed gross misconduct by a preponderance of the evidence. *Manos v. First Bank Minnehaha*, 357 N.W.2d 372, 375 (Minn.App.1984).

The referee concluded relator's action in transferring funds was not gross misconduct, but "an unresolved dispute between [Mears] on the one hand and [relator] and [Fasching] on the other hand regarding a deferred compensation arrangement." The referee indicated that dispute would be resolved in civil court and noted the funds remained intact. Finally, the referee noted that relator's actions in "protecting his interests in that dispute did not constitute misconduct on his part in connection with the work" and that Mears had not offered evidence that relator's work was unsatisfactory. The commissioner found relator's actions in transferring company funds to a personal account constituted gross misconduct, citing relevant portions of Minnesota's theft statute.[2] Therefore the referee's

---

2. A person who commits the following actions commits theft:
(1) intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property; or
(2) having a legal interest in movable property, intentionally and without consent, takes the property out of the possession of a pledgee or other person having a superior right of possession, with intent thereby to deprive the pledgee or other person permanently of the possession of the property; or

\* \* \* \* \* \*
(5) intentionally commits any of the acts listed in this subdivision but with intent to exercise temporary control only and:
(a) the control exercised manifests an indifference to the rights of the owner or the restoration of the property to the owner; or
(b) the actor pledges or otherwise attempts to subject the property to an adverse claim; or
(c) the actor intends to restore the property only on condition that the owner pay a reward or buy back or make other compensation.
Minn.Stat. § 609.52, subd. 2 (1990).

decision was reversed and relator was denied benefits.

■ We do not comment on whether relator's actions in transferring funds constituted theft or gross misconduct, since those actions were not the reason for his discharge. Relator was terminated on July 1, 1991. Mears did not learn of the transfer of funds until July 12, 1991. Respondent did not appeal the finding that termination occurred on July 1 rather than July 12. Therefore, the transfer of funds could not have been the cause of the discharge. The character of the termination is determined at the time of the termination. *See Sticka v. Holiday Village S.,* 348 N.W.2d 761, 763 (Minn.1984) (characterization of the termination as voluntary or involuntary).

■ To disqualify a person from receiving benefits, the misconduct must be the cause of the discharge. *Harringer v. AA Portable Truck & Trailer Repair, Inc.,* 379 N.W.2d 222, 223 (Minn.App.1985).

> Minn.Stat. § 268.09, subd. 1(2) (1984) [now codified at Minn.Stat. § 268.09, subd. 1(b) (1990)], states that a person is not entitled to receive unemployment compensation benefits if he was "discharged *for* misconduct." *Id.* (emphasis supplied). This language suggests that an employer who alleges employee misconduct must prove that such conduct was in fact the cause of the employee's dismissal.

*Id.* (footnote omitted). The commissioner distinguishes *Harringer* as dealing only with misconduct under Minn.Stat. § 268.09, subd. 1(b), not gross misconduct under Minn.Stat. § 268.09, subd. 1(d). However, subdivision 1(d) contains similar language disqualifying a person where "discharged for gross misconduct connected with work." Relator may not be disqualified from receiving benefits for gross misconduct because the transfer of funds allegedly constituting gross misconduct was not the cause of his termination.

■ Respondent alternatively argues relator had also committed actions constituting misconduct under Minn.Stat. § 268.09, subd. 1(b) before July 1 by threat-

ening to start a competing business and to scale the business down. The referee concluded relator had not committed misconduct. The commissioner did not address this issue. Subdivision 1(b) provides that an employee discharged for misconduct is disqualified from receiving unemployment compensation benefits. Misconduct is defined as

> * * * conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" * * *.

*Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973). The employer has the burden to prove misconduct was the reason for the termination. *Lumpkin v. North Cent. Airlines, Inc.,* 296 Minn. 456, 450–60, 209 N.W.2d 397, 400 (1973). The issue is not whether the employer had cause to discharge, but whether the employee committed misconduct within the meaning of the unemployment compensation statutes. *Windsperger v. Broadway Liquor Outlet,* 346 N.W.2d 142, 144 (Minn.1984).

■ Relator's actions in threatening to start a competing business and scale the business down were not included in the referee's or the commissioner's findings and were not stated as the reasons for termination. These actions were not the cause of the termination and may not be relied upon as the basis for termination of benefits. *See Harringer,* 379 N.W.2d at 223. The only reason advanced for the termination on July 1 was that Mears felt

he and relator could no longer work together. Misconduct was not cited as a determining factor.

The total circumstances of this case suggest possible consideration of the extension of existing law to include the application of equitable estoppel in unemployment compensation cases. We are not reviewing a trial court decision, but an agency decision, and under present law we lack jurisdiction to apply the equitable estoppel doctrine to this case. The supreme court or the legislature might wish to consider whether equitable estoppel should be available in unemployment compensation cases so that evidence known at the time of the hearing could be considered, whether or not known by the employer at the time of the employee's termination. Under current law, we are bound to rule in favor of relator. We reverse the commissioner's decision and reinstate the referee's award of unemployment compensation benefits to relator.

### DECISION

Relator was not terminated for gross misconduct or misconduct, therefore he is entitled to unemployment compensation benefits.

Reversed.