**Kenneth A. MITCHELL, Relator,**

v.

**CROOKSTON WELDING MACHINE CO., Commissioner of Jobs and Training, Respondents.**

No. C9–92–1024.

Court of Appeals of Minnesota.

Nov. 17, 1992.

Elroy E. Hanson, Wambach & Hanson Law Office, Mahnomen, for Kenneth A. Mitchell.

Michael J. Tye, Dickel, Johannson, Taylor, Rust & Tye, P.A., Crookston, for Crookston Welding Mach. Co.

Kent E. Todd, St. Paul, for Com'r of Jobs and Training.

Considered and decided by AMUNDSON, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

LANSING, Judge.

Kenneth Mitchell appeals his disqualification from unemployment compensation for voluntarily quitting his job without good cause attributable to his employer. We affirm.

## FACTS

Crookston Welding Machine Company employed Kenneth Mitchell as a fusion welder at an hourly rate of $8.50. Mitchell was not consistently paid the agreed amount and did not receive the prevailing wage required by the Davis–Bacon Act when working for Crookston Welding on federally-funded projects.

In October 1989 Mitchell worked on a project that entitled him to an hourly wage of $22.62 under the Davis–Bacon Act, but he received only $7.00 an hour. In October 1990 while working on an Illinois highway project, a union representative informed Mitchell that he was entitled to the prevailing wage rate of $21.50 an hour plus $5.90 an hour in fringe benefits. Although previous objections resulted in additional payment, Crookston Welding's president re-fused to pay Mitchell more than $8.50 an hour on the Illinois project.

After completing the Illinois project, Mitchell reported to South Dakota for another construction assignment. While working in South Dakota, Mitchell used Crookston Welding's automated teller card to withdraw between $3,500 and $4,000 from Crookston Welding's account. Mitchell testified that he intended to use part of the funds to pay an electrician. When Crookston Welding's president told Mitchell not to pay the electrician, Mitchell kept the funds for himself.

After completing the South Dakota project, Mitchell submitted his records, receipts, and resignation to Crookston Welding. In his resignation letter, Mitchell stated that Crookston Welding owed him approximately $3,100 for the Illinois project. Mitchell applied for unemployment compensation and, after a series of hearings, a commissioner's representative ultimately concluded that Mitchell was not entitled to receive unemployment benefits. Mitchell was acquitted on a South Dakota charge of grand theft embezzlement from Crookston Welding.

## ISSUE

Did the commissioner's representative err by concluding that Mitchell's misconduct eliminated his good cause to quit?

## ANALYSIS

■ An employee who voluntarily quits a job is not entitled to receive unemployment compensation unless the employer's actions provided good cause to quit. Minn. Stat. § 268.09, subd. 1(a) (1990). In Minnesota, employer violations of statutory restrictions on deductions from an employee's wage have been held to constitute good cause. *Knutson v. DJM Transp., Inc.*, 413 N.W.2d 598 (Minn.App.1987); *Kahnke Bros., Inc. v. Darnall*, 346 N.W.2d 194 (Minn.App.1984).

Other states have held that an employee has good cause to voluntarily leave employment when an employer refuses to pay a statutorily mandated wage. *Mueller v.*

*Harry Lee Motors,* 334 So.2d 67 (Fla.Dist. Ct.App.1976); *Thomas v. Review Bd.,* 543 N.E.2d 397 (Ind.Ct.App.1989); *In re Raymus,* 102 A.D.2d 154, 477 N.Y.S.2d 751 (1984); *LaTruffe v. Commonwealth,* 70 Pa.Cmwlth. 323, 453 A.2d 47 (1982).

 The commissioner's representative found that Mitchell requested payment of the appropriate wage, and that finding is supported by the record. *See White v. Metropolitan Medical Ctr.,* 332 N.W.2d 25, 26 (1983). Despite Crookston Welding's failure to comply with the Davis–Bacon Act, the commissioner denied unemployment benefits because of Mitchell's retention of funds belonging to Crookston Welding. Although Mitchell denies any misconduct, the findings on his wrongful retention of money are supported by the record. *See id.* at 26.

Mitchell argues that any misconduct is irrelevant because it was not discovered until after he quit. This argument relies on *Hansen v. C.W. Mears, Inc.,* 486 N.W.2d 776 (Minn.App.1992), in which this court concluded that misconduct which is discovered after the discharge cannot be considered as a reason for discharge. The facts in *Hansen* are distinguishable. In discharge cases the employer has the burden of proving the employee's misconduct, and the focus is on the employer's knowledge at the time of the discharge. *Lumpkin v. North Cent. Airlines, Inc.,* 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973).

Mitchell was not discharged but voluntarily quit. Because he quit he has the burden of proving good cause attributable to his employer. *Zepp v. Arthur Treacher Fish & Chips, Inc.,* 272 N.W.2d 262 (Minn. 1978). The focus, therefore, is on Mitchell's knowledge at the time he quit. Prior to the time that Mitchell took the funds out of Crookston Welding's account, Mitchell could have resigned with good cause as a result of his employer's violation of the Davis–Bacon Act. However, at the time Mitchell quit, he had extinguished this claim by improperly withdrawing and holding funds from Crookston Welding's account that exceeded the amount Mitchell alleged Crookston Welding owed him.

Mitchell's actions are properly considered in determining the validity of his good cause to quit.

## DECISION

The commissioner's representative properly concluded that Mitchell voluntarily quit his job without good cause attributable to his employer.

Affirmed.