*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1948**

State of Minnesota,
Respondent,

vs.

J. E. H.,
Appellant.

**Filed July 11, 2016
Reversed and remanded
Bratvold, Judge**

Hennepin County District Court
File No. 27-CR-08-14571

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Corrine Heine, Minnetonka City Attorney, Anna Krause Crabb, Assistant City Attorney, Rolf A. Sponheim, Assistant City Attorney, Minnetonka, Minnesota (for respondent)

Adam L. Sienkowski, James H. Gilbert Law Group, PLLC, Eden Prairie, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BRATVOLD**, Judge

J.E.H. appeals the district court's denial of his expungement petition. Because the district court based its decision on findings that are clearly erroneous and did not make

some of the required findings on the statutory expungement factors, we reverse and remand for proceedings consistent with this opinion.

**FACTS**

In March 2008, J.E.H. was arrested and charged with two counts of driving while intoxicated. According to the police report, the arresting officer found J.E.H. passed out in his car, which was stopped in the turning lane of an intersection with the driver's door open. His alcohol concentration was 0.16. In May 2008, J.E.H. pleaded guilty to the misdemeanor of operating a motor vehicle with an alcohol concentration of 0.08. *See* Minn. Stat. § 169A.20, subd. 1(5) (2008). He was convicted and sentenced to 30 days; 28 days were stayed for 2 years on certain conditions, including completion of a 1-day DWI course. J.E.H. fulfilled the conditions of his probation and was discharged in May 2010.

In June 2015, J.E.H. petitioned for expungement of his criminal record, arguing that expungement would provide a benefit to him that is commensurate with the disadvantages to the public and public safety. *See* Minn. Stat. §§ 609A.01 to .04 (2014). J.E.H. did not petition pursuant to the inherent authority of the district court to expunge records held by the judicial branch. J.E.H. instead petitioned under the recently revised expungement statute, which allows petitions to seal all records relating to an arrest, trial, or verdict if "the petitioner was convicted of or received a stayed sentence for a petty misdemeanor or misdemeanor and has not been convicted of a new crime for at least two years since discharge of the sentence for the crime." Minn. Stat. § 609A.02, subd. 3(a)(3).

According to J.E.H.'s sworn petition and supporting affidavit, he is eligible to petition because he was convicted of a misdemeanor, was discharged in 2010, and has not

2

been convicted of a new crime for at least two years since the discharge of his sentence. J.E.H. also averred that he is an International Development Specialist for Enzacta USA, which is owned and operated by his family. J.E.H. attested that "Enzacta is in the business of selling health and wellness products to individuals around the world" and requires "extensive international travel by its management to execute its business model." He stated that his DWI conviction "has significantly impacted [his] ability to adequately perform [his] duties and has affected [his] upward mobility within the company."

J.E.H. explained that Enzacta "does a significant amount of business in Canada" and he was chosen to lead Enzacta Enterprises Canada, Ltd. After receiving an ownership share in Enzacta Canada and taking over its sales efforts, J.E.H. "was advised by [his] Canadian attorney to relinquish any ownership share in Enzacta Canada because [the] company could not sell products in certain markets if an owner has a criminal record in the United States." J.E.H. sold his interest in the Canadian company. In addition, J.E.H. provided evidence that his criminal record prevented him from signing official Canadian documents on behalf of his business and from traveling to Canada to meet with potential clients and distributors. J.E.H. averred that Enzacta Canada "cannot be a profitable entity" without J.E.H. being able to travel, manage, and direct the company.

J.E.H. supported his affidavit with a letter from his father, the president of Enzacta, and a letter from J.E.H.'s Canadian attorney, both of which corroborated J.E.H.'s attestations about the impact of J.E.H's conviction on Enzacta Canada, J.E.H.'s ability to travel to Canada, and sign documents in Canada.

J.E.H. also averred that he does the "vast majority of the global travel for all Enzacta's businesses." In addition to Canada, Enzacta has operations in other countries, including the Philippines, Guatemala, South Korea, and Mexico. J.E.H. stated that his DWI conviction "has greatly hindered" his ability to travel internationally for business because he cannot participate in the Global Entry program.[1] J.E.H. alleged that he has missed important flights and meetings as a result of travel delays that could have been prevented by his participation in the program.

J.E.H. also attested that he has been a volunteer member of his local fire department for 11 years. Shortly after his DWI, J.E.H. recounted that he "stood before the members of the Department and explained the mistake [he] made." He also reported that he has been employed at all times since his conviction and has volunteered with a program working with middle and high school students for 14 years. J.E.H. attached a letter from the fire chief describing the "countless hours" J.E.H. volunteers every week. J.E.H. added that the DWI conviction is his only criminal offense.

The state opposed J.E.H.'s petition and submitted limited evidence. In addition to the correspondence from the Minnetonka City Attorney's Office opposing the petition, the state submitted documents downloaded from the Enzacta website.

---

[1] Although J.E.H. did not explain the Global Entry program, its website states that "Global Entry is a U.S. Customs and Border Protection (CBP) program that allows expedited clearance for pre-approved, low-risk travelers upon arrival in the United States." U.S. Customs & Border Protection, *Global Entry*, https://www.cbp.gov/travel/trusted-traveler-programs/global-entry (last visited June 24, 2016).

In August 2015, a referee heard J.E.H.'s expungement petition. At the hearing, J.E.H. argued that he qualified for expungement because he "has done everything right" since his conviction, is not a danger to society, and needs the expungement for employment reasons. Representatives from the Hennepin County Attorney's Office and the Minnetonka City Attorney opposed expungement because a DWI conviction is enhanceable for ten years and it "would be very difficult to use this prior offense for enhancement" if his record was to be expunged. No other agencies objected.

The referee denied J.E.H.'s petition in an order filed in October 2015, concluding that J.E.H. had not met his burden of demonstrating by clear and convincing evidence that expungement would yield a benefit to him commensurate with the disadvantages to the public and public safety. A district court judge approved the referee's order. J.E.H. appeals.

## DECISION

### I. Standard of Review

This court reviews a district court's expungement decision for abuse of discretion. *State v. M.D.T.*, 831 N.W.2d 276, 279 (Minn. 2013). "Under an abuse of discretion standard, [an appellate court] will not overrule the district court unless the court exercised its discretion in an arbitrary or capricious manner or based its ruling on an erroneous interpretation of the law." *State v. R.H.B.*, 821 N.W.2d 817, 822 (Minn. 2012). We review a district court's findings of fact supporting expungement for clear error. *State v. A.S.E.*, 835 N.W.2d 513, 517 (Minn. App. 2013). Findings of fact are clearly erroneous when they are "manifestly contrary to the weight of the evidence or not supported by the evidence as

5

a whole." *State v. Schultz*, 676 N.W.2d 337, 341 (Minn. App. 2004) (quotation omitted). Any legal conclusions are reviewed de novo. *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013).

This appeal raises questions about how the expungement statute is interpreted. "Statutory interpretation is a question of law that is reviewed de novo." *In re Welfare of J.T.L.*, 875 N.W.2d 334, 336 (Minn. App. 2015). The object of statutory interpretation "is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). "In interpreting statutory language, words and phrases are to be given their plain and ordinary meaning." *J.T.L.*, 875 N.W.2d at 336. "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16.

## II.     Expungement Statute

The Minnesota Legislature changed our expungement statutes in 2014. 2014 Minn. Laws. Ch. 246, §§ 8-14, at 814-19. In making revisions, the legislature did *not* change the standard for relief, which remains as follows:

> [E]xpungement of a criminal record is an extraordinary remedy to be granted only upon clear and convincing evidence that it would yield a benefit to the petitioner commensurate with the disadvantages to the public and public safety of: (1) sealing the record; and (2) burdening the court and public authorities to issue, enforce, and monitor an expungement order.

*Compare* Minn. Stat. § 609A.03, subd. 5(a) (2014), *with* Minn. Stat. § 609A.03, subd. 5(a) (2013). "Clear and convincing evidence is evidence that is more than a preponderance of the evidence but less than proof beyond a reasonable doubt. Such proof is shown when the

6

truth of the facts asserted is highly probable." *State v. Jones*, 753 N.W.2d 677, 696 (Minn. 2008) (quotations and citations omitted).

The 2014 amendments for the first time provided that the district court "shall consider" the following factors:

> (1) the nature and severity of the underlying crime, the record of which would be sealed;
> (2) the risk, if any, the petitioner poses to individuals or society;
> (3) the length of time since the crime occurred;
> (4) the steps taken by the petitioner toward rehabilitation following the crime;
> (5) aggravating or mitigating factors relating to the underlying crime, including the petitioner's level of participation and context and circumstances of the underlying crime;
> (6) the reasons for the expungement, including the petitioner's attempts to obtain employment, housing, or other necessities;
> (7) the petitioner's criminal record;
> (8) the petitioner's record of employment and community involvement;
> (9) the recommendations of interested law enforcement, prosecutorial, and corrections officials;
> (10) the recommendations of victims or whether victims of the underlying crime were minors;
> (11) the amount, if any, of restitution outstanding, past efforts made by the petitioner toward payment, and the measures in place to help ensure completion of restitution payment after expungement of the record if granted; and
> (12) other factors deemed relevant by the court.

Minn. Stat. § 609A.03, subd. 5(c). The district court must make findings of fact concerning these statutory factors. *See* Minn. Stat. § 645.44, subd. 16 (2014) (defining "shall" as mandatory); *cf. J.T.L.*, 875 N.W.2d at 335, 338 (interpreting parallel statutory factors as mandatory under Minn. Stat. § 260B.198, subd. 6(b) (2014)); *State v. K.M.M.*, 721 N.W.2d

7

330, 334–35 (Minn. App. 2006) (remanding for insufficient findings under Minn. Stat. § 609A.03, subd. 5 (2004)).

## III.    Analysis

J.E.H. first challenges the district court's decision by arguing that some of the findings of fact are clearly erroneous. Specifically, he argues that the disadvantages to public safety found by the district court are contrary to the record and to Minnesota law and that the district court erred "by marginalizing and ignoring the substantial benefits that [J.E.H.] will receive from an expungement." We address each challenged finding in turn.

### A.    Disadvantages to the Public and Public Safety

#### 1.    Accuracy and Accessibility of Sealed Records

J.E.H. first argues that the district court clearly erred in finding that "sealed records are less accurate, more difficult to find and less organized and that the disadvantage to the public and public safety in maintaining accurate records is substantial." He also challenges the district court's ruling that the disadvantages to the public will occur because prior DWI convictions may be used for enhancement purposes.

The district court's decision is somewhat confusing on this point. To be clear, the district court does not explicitly find that sealed records are less accurate and less accessible. But the district court may imply as much by repeatedly stating the importance of "maintaining complete and accurate records of driving violations." Further, the record does not establish how accessible or inaccessible expunged records are among criminal agencies.

8

The legislature explicitly provided for an expunged record to be "opened, used, or exchanged between criminal justice agencies without a court order for the purposes of initiating, furthering, or completing a criminal investigation or prosecution or for sentencing purposes or providing probation or other correctional services." Minn. Stat. § 609A.03, subd. 7a(b)(1). Moreover, the prosecuting authorities appear to recognize that the statute allows for sharing of records. The attorney for the City of Minnetonka argued that sharing is "impractical" if the agency that needs the records is unaware of them. A representative of the Hennepin County Attorney's Office objected to J.E.H.'s petition on the ground that his conviction could still be used as an enhanceable offense.

In sum, we agree with the district court that maintaining complete and accurate records is important. But there is nothing in this record to suggest that J.E.H.'s criminal record would not be accessible or accurate if expunged. Because Minnesota law allows agencies to share expunged records, accessibility by prosecuting agencies does not appear to be an issue in this case. To the extent that the district court's decision implies otherwise, that implication is against the evidence in the record.

### 2. Objections from Prosecuting Agencies

Next, J.E.H. argues that the district court erred in finding that the objections from the Minnetonka assistant city attorney and the Hennepin County assistant county attorney "carry significant weight."

The expungement statute explicitly instructs the district court to consider "the recommendations of interested law enforcement, prosecutorial, and corrections officials."

9

Minn. Stat. § 609A.03, subd. 5(c)(9). In light of this statutory mandate, the district court did not clearly err in considering the objections of prosecutorial officials.

Also, the district court does not appear to have assigned the recommendations undue weight. The district court mentioned the recommendations once in an eight-page order. Because the district court followed the statutory instruction to consider the recommendations of prosecuting agencies and did not assign any undue weight, the challenged finding is not clearly erroneous.

### 3. Nature and Severity of Underlying Crime

Next, J.E.H. challenges the district court's findings of fact regarding the severity of the underlying conviction. J.E.H. argues that his conduct "is encompassed within the misdemeanor charge and the district court and the State are trying to enhance its seriousness beyond the charge by dressing it up." He maintains that "the seriousness of DWIs has already been taken into consideration by the Legislature and the district court disregarded the clear legislative intent regarding the seriousness of this type of DWI."

The expungement statute explicitly instructs the district court to consider the nature and severity of the underlying crime. Minn. Stat. § 609A.03, subd. 5(c)(1). Here, the district court found that J.E.H.'s offense was "serious and far from marginal" because his blood-alcohol concentration was twice the legal limit.

The district court, however, emphasized the severity of DWIs generally in several paragraphs. To support its finding that a DWI is a serious offense, the district court cited Minnesota Statutes section 299C.10, subdivision 1(e) (2014), which lists DWIs as a "targeted misdemeanor," requiring law-enforcement officers to collect identification data

10

on offenders. The district court also noted that Minnesota Statutes section 171.12, subdivision 3(4) (2014), requires that records of DWI convictions be retained permanently. And the district court reasoned, without citation, that "[t]here is a particularly acute public interest in driving conduct where alcohol is a factor" because of the "amount of death, injury and destruction that results from mixing alcohol with driving."

Most of the district court's findings on this factor concern DWIs generally and would disqualify any petitioner seeking to expunge a DWI record. It would contravene the expungement statute to enforce a per se rule against expungements for DWIs, yet that is what the district court's reasoning does here.[2] Because the legislature has provided that expungement is available to DWI offenders, the district court clearly erred in its analysis of the nature and severity of the underlying crime.

## B.     Benefits to the Petitioner

J.E.H. argues that the district court "marginalized the benefits of expunging [his] criminal record by making findings that are contrary to the evidence in the record so that

---

[2] Before the legislature made changes to the expungement statutes, this court recognized that a district court had inherent authority to expunge DWI convictions from judicial records. *See, e.g.*, *State v. B.G.S.*, No. A10-1600, 2011 WL 1743914, at *1 (Minn. App. May 9, 2011) (affirming expungement of DWI convictions from judicial records under district court's inherent authority); *State v. Manning*, No. C8-95-2616, 1996 WL 380642, at *3 (Minn. App. July 9, 1996) (affirming expungement of DWI charges under district court's inherent authority); *see also Schumann v. State*, 367 N.W.2d 688, 691 (Minn. App. 1985) (affirming district court's denial of expungement partly because petitioner had "not shown that the benefit of expungement outweighs the disadvantage to the public from elimination of the record"). We note that expungement of judicial records does not implicate the same concerns as statutory expungement of executive records, but we cite these cases to observe that Minnesota courts have not recognized a per se rule against DWI expungements.

[the court] could deny [his] petition." Specifically, he challenges the district court's findings that (1) expungement will provide little benefit to J.E.H. and Enzacta Canada, (2) being part of the Global Entry Program does not have a substantial impact on J.E.H, and (3) J.E.H. did not petition to seal his record with the Department of Public Safety.

Although the district court does not indicate in its order how these findings align with the statutory factors, they fit under the umbrella of the sixth factor: "the reasons for the expungement, including the petitioner's attempts to obtain employment, housing, or other necessities." Minn. Stat. § 609A.03, subd. 5(c)(6). The sixth factor is particularly significant because it mirrors one component of the statutory standard for expungement, i.e., whether the benefits of expungement are commensurate with the disadvantages to the public and public safety. *Id.*, subd. 5(a). The district court determined that J.E.H.'s "claim of hardship in reality amounts to a certain level of inconvenience" and went on to explain that he is not barred from international travel, his business "has and will continue to adjust," and that he has "an established path to attain his goal via Canadian processes." This finding is against the evidence in the record.

J.E.H. argues that, even if he could enter Canada through the rehabilitation program, the district court did not address his unrebutted evidence that Canada does not allow him to "sign many of the financial and legal documents" for Enzacta Canada to move forward. J.E.H. is correct that the district court did not discuss this evidence. Instead, the district

12

court relied on its own reading of the Canadian entry requirements to draw conclusions about the effect of an expungement on J.E.H.'s ability to travel and do business in Canada.[3]

Even if the district court correctly interpreted the Canadian entry requirements to conclude that J.E.H. could obtain a travel waiver, the district court failed to address J.E.H.'s evidence that an ability to travel to Canada would be meaningless if he could not sign official documents or conduct business on behalf of Enzacta Canada. Accordingly, based on this record, the district court's finding that expungement will not aid J.E.H. in his employment with Enzacta is clearly erroneous.

J.E.H. also challenges the district court's finding that "[f]ailure to be in the Global Entry program does not limit travel; it merely makes that travel somewhat more tedious." We note that J.E.H. submitted limited evidence on the benefits of the Global Entry program and did not provide evidence of an actual denial. Accordingly, based on this record, the district court's finding regarding the Global Entry program is not clearly erroneous.

---

[3] The district court may not have interpreted Canadian entry requirements correctly. The entry-requirements document provided by J.E.H. (and referenced by the district court) includes definitions of expunged and sealed U.S. dispositions, noting that an expunged record means "obliterate[d]" and is "not a conviction," while a sealed record is not destroyed and is still a criminal record. Based on these definitions, the district court concluded that, even if J.E.H.'s record were expunged under Minnesota law, "he is likely to find his issue unchanged for entry into Canada because it does not destroy or obliterate the underlying records, it merely seals them." We do not attempt here to interpret Canadian law, but we note that the document also states that "[t]he fact that a sealed record exists does not in and of itself constitute inadmissibility." We also note that the district court's finding is contrary to the letter from J.E.H.'s Canadian attorney, which states that expungement "will allow [J.E.H.] to take further steps towards resuming his management position with Enzacta Canada and tend to the business which he helped plan."

Finally, the district court clearly erred in finding that J.E.H. did not seek expungement of the records held by the Department of Public Safety. The proof of service attached to J.E.H.'s petition for expungement and supporting memorandum states that he served the Department of Public Safety, which did not object. The district court's finding is not supported by the record and undermines its analysis of the benefits of expungement.

## C.    Other Factual Findings

This court has previously stated in the context of expungement of criminal records for juveniles: "While we appreciate the informality of expungement proceedings, we are unable to review whether a grant or denial of expungement constitutes an abuse of discretion unless the district court makes findings or determinations on the record regarding [expungement] factors." *J.T.L.*, 875 N.W.2d at 337–38 (quotation omitted). Without adequate findings on the statutory factors, "we are unable to determine whether the district court acted within its discretion in ordering expungement." *Id.* at 337; *see also In re Civil Commitment of Spicer*, 853 N.W.2d 803, 809–10 (Minn. App. 2014) (observing that meaningful appellate review requires "particular findings").

Here, instead of making the required findings under each statutory factor, the district court quoted the statutory language and then stated, "These factors have been considered by the Court. The following analysis reflects the totality of Petitioner's circumstances and an evaluation of all the relevant factors." In its analysis, the district court focused on the overarching statutory standard that a district court must weigh the benefits of expungement to the petitioner against the disadvantages to the public and public safety. *See* Minn. Stat.

14

§ 609A.03, subd. 5(a). In so doing, it appears that the district court considered many of the relevant factors.

The district court, however, made minimal or no findings about "(2) the risk, if any, the petitioner poses to individuals or society"; "(4) the steps taken by the petitioner toward rehabilitation following the crime"; or "(8) the petitioner's record of employment and community involvement." In addition, the district court's decision to make express findings that J.E.H. is "well employed" and owns his home in an "affluent suburb" is relevant to the sixth factor but does not weigh against expungement. Without adequate findings on each of the required statutory factors, we are not able to fully review the district court's discretion and therefore remand for findings.

Before concluding, we note that J.E.H.'s arguments rely heavily on *R.H.B.* to attack the district court's findings as "generalized and unremarkable." *R.H.B.* is a recent expungement case in which the petitioner had been acquitted and, accordingly, petitioned under a different subsection of the expungement statute. 821 N.W.2d at 820. In the case of acquittal, Minnesota Statutes section 609A.03, subdivision 5(b), provides that the district court "*shall* grant the petition to seal the record *unless the agency or jurisdiction* whose records would be affected *establishes by clear and convincing evidence* that the interests of the public and public safety outweigh the disadvantages to the petitioner of not sealing the record." (Emphasis added). Under this provision, expungement is presumed and the state bears the burden of proof to counter the presumption. The supreme court in *R.H.B.* held that the state did not carry its burden because it offered evidence that was "unremarkable and generalized, and could be submitted in nearly every expungement

15

case." *R.H.B.*, 821 N.W.2d at 822. In a footnote, J.E.H. acknowledges that *R.H.B.* differs from his case because he was convicted and bears the burden of proof.

We decide that the district court erred in basing its decision on clearly erroneous findings and did not make other required statutory findings, therefore, we need not decide *R.H.B.*'s applicability to expungement petitions under Minn. Stat. § 609A.03, subd. 5 (a), (c). At the very least, *R.H.B.* stands for the proposition that district courts must carefully consider the facts of each petitioner's case and not rely on generalizations regarding expungement or certain categories of crimes. The statutory factors in Minn. Stat. § 609A.03, subd. 5 (c), contemplate an individualized assessment of each petitioner's case. By making findings on each statutory factor, district courts demonstrate this approach and facilitate meaningful appellate review.

J.E.H. urges this court to consider the merits of his petition and order expungement. We decline to do so here because the statute contemplates that factual findings are the province of the district court. *See id.*, subd. 5; *see also J.T.L.*, 875 N.W.2d at 338 n.3 (remanding petitioner's juvenile-records expungement request in the absence of findings on each factor); *Lumpkin v. N. Cent. Airlines, Inc.*, 296 Minn. 456, 462, 209 N.W.2d 397, 401 (1973) ("[A]n appellate court is not empowered to make or modify findings of fact and is thereby limited in its scope of review."). Accordingly, we reverse and remand for further findings and analysis consistent with this opinion. Upon remand, the district court may in its discretion reopen the record.

**Reversed and remanded.**